Mr. Slade has been in prison for now 40 years for the crime of first degree murder, despite the state both failing to present evidence of deliberation and instructing and arguing to the jury that premeditation was all that was needed to convict. The facts of Mr. Slade's case do not meet a properly instructed first degree murder charge. That reality was not cemented until this court's decision in Riley v. Filson. In that decision, this court unambiguously and for the first time explained that first degree murder in Nevada requires a distinct finding of the crime of first degree murder. Sotomayor Can we say that in 2007, Hulk? I mean, we've been saying this for a long time. Your argument, I think, you're not arguing changed circumstances here, are you? I mean, in other words, the threshold question is whether your petition was timely. Perry Russell Yes. Sotomayor And as I take it, your argument is your petition was timely because your client was actually innocent. Perry Russell Yes. Sotomayor Are you? Okay. So — Perry Russell And it's based on a change in the law. And you're correct, Your Honor. Sotomayor Okay. So the question — for me, the question is, was there any — actual innocence, as our cases define it, means you got proof you didn't do the crime, or, you know, or the evidence. So, for example, in the case that you keep citing, his name, I can never get right, Vosgian, I guess, is the name. Perry Russell Vosgian, yes. A later decision said, look, what you did couldn't have been a crime because — you know, because of the nature of the person that was being solicited. And so even though you pleaded guilty, you pleaded guilty to something that simply — it wasn't the crime for which you were charged. Now I'm getting into my questions, so bear with me. On this record, it seems to me if this were a sufficiency of the evidence case and the jury hadn't been properly instructed, I would conclude there was evidence from which a jury could find a liberation. It was improperly instructed, but I think the circumstantial evidence is such that a jury could find a liberation. If I'm right about that, then don't you fail on your actual innocence claim? Yonar Yonar, if you find that there is evidence of deliberation, then yes. I believe that under a properly instructed charge, pursuant to a properly instructed charge, Mr. Slade would have been found guilty. Let's go back to the last recent state court decision, whatever it is. What does it tell me? The last recent — are you referring to the state court decision in this case? Yes. So in this case, the timeline is as follows. Mr. Slade's direct appeal is finalized in 1985. He does not file any state petitions until 2017, and that would be two years after the Riley decision. And how did they dispose of the 2017 petition? They found the case procedurally barred, and they determined that the actual innocence exception, pursuant to their standards, did not apply. Now — So what's our standard review of that decision? Well, Your Honor, this court's review is the district court's decision de novo. Why is it de novo review? Well, because we are addressing whether the petition is procedurally barred. We addressed it — we reviewed the district court's decision de novo. I think our district court. She was asking about the state trial court. How is the state decision in Habeas' review — how is that — what is our standard review for that? There's no deference, though, to the state's calculus as to whether their statutes regarding successive petitions or untimely petitions were not — Well, that's what I'm trying to figure out here. The state court says you haven't established actual innocence to excuse your late filing. Yeah. Is the state standard for actual innocence different than ours? Yes. What is it? Well, I'm not sure, Your Honor, but — Well, how do you know it's different if you're not sure what the standard is? But here — so the state — the state dismissed the petition based on the procedural bars, and they determined that he was not actually innocent. They found that there was sufficient evidence. Okay, and that's — I'm getting back to our — our standard, as I read it, is not simply that an instructional error was made at trial, no matter how serious. That would be — if you were timely, that would be a really good argument. But you're not timely, so you have to demonstrate actual innocence. Yes. And the state court found that you didn't demonstrate actual innocence. And so if their standard is — overlaps with ours, it seems to me we'd have to give some deference to their finding that this record didn't establish actual innocence. No, Your Honor. No deference is due. This court reviews the actual innocence standard as it's provided in Schlupp. And — Well, but that's — look, that's not always true. You go into a state court with an eyewitness who says I was someplace else. The state court has a hearing and says, I don't find him credible, and therefore you haven't shown actual innocence. We would defer to that, would we not? We wouldn't have — witness wouldn't show up again in federal court because of pinholster. And so we would have to defer to the state finding. So the question for me is whether there's sufficient evidence in this record from which a reasonable jury could have found deliberation. If the state court found that that was the case, wouldn't we have to defer to that unless that was an unreasonable application of the law to the facts? I'll concede that there's a deference that is so to the facts that were found by the state courts, including the lower court. But with respect to the — any analysis as to whether my client is actually innocent pursuant to Schlupp, there's no deference, though, Your Honor. Okay. So let's assume no deference for a moment. Here's the evidence that troubles me in this case. Your client was heard to argue with the victim. There was at least some period of time before the shooting that the argument was heard. Yes. Why isn't that circumstantial evidence from which a reasonable jury could conclude deliberation? I mean, you know, we often don't — deliberation is almost never shown by the defendant saying, I deliberated. We try to — we infer it from — we infer it from the evidence. And the same evidence that might have supported premeditation could also have been interpreted by a jury, even though it's a different standard, to support a finding of deliberation. So tell me why that's wrong. Well, that's a good question, Your Honor, because actually the — Thank you. Well, it prompts — it prompts an interesting set of facts, which is that actually the — the occurrence of an argument prior to the shooting cuts against deliberation. And this Court said that in Polk. The evidence of substance abuse, which is also present in this case, cuts against deliberation, and that was against the — So I understand your position. Your position is, had the jury been properly instructed on the evidence in this case, it could have reached no verdict except not guilty. It would have reached a verdict of second-degree murder. Excuse me? It would have likely reached a verdict of second-degree murder. That's what I'm saying, because — Well, but on first-degree murder, you're saying it could not have convicted — No. — on the evidence presented at trial. Yes. I mean, I don't mean to speculate what the jury would have done, but there's no evidence of deliberation based on, again, substance abuse, based on testimony of arguments. We have to remember — Put it differently. The judge should have granted a directed verdict, in your view. Forget the instructional issue for a moment. At the end of the — at the end of the prosecution's case, had you moved for — had the defense moved for a directed verdict because the government had not shown any evidence from which a reasonable jury could find deliberation, the judge should have granted it. That's correct, Your Honor. If we look at the — But that is the standard that we have to look at, is it not? Yes, Your Honor. OK. Here's the facts in the light most favorable to the state. Pursuant to the only witness that was in the room, she stated at trial that the victim took out the gun and that she pointed it. Maybe inadvertently so, but she pointed it at Mr. Slade. And she testified that there was a struggle. Now, all of the state witnesses, and that would include the victim's sister and the victim's three nieces, who were ranged between the age of, I believe, 9 and 12, all testified that my client, the first thing he does after the shooting is, first he tries to go for the room in the phone where the shooting happened, and then he tries to go again, because I guess that phone was not operational, he goes for the phone in the living room. And he's precluded from calling 911 by the victim's sister. What else do the state's own witnesses tell us? They tell us that after he's precluded from calling 911 from the living room, he runs upstairs, knowing the layout of the apartment complex, knowing that there's no way out by going upstairs, but thinking that there's a phone up there that he can use. He goes upstairs, and he tries to call for help again. And only after that does he go to the — What does he later say? So, at trial, you're referring to the only witness who was in the room. So that's why she testified at trial. At trial, she was impeached by the — Yeah, but, see, impeached doesn't help me, because the question is, was there evidence from which a jury could conclude something? So tell me what you said at trial that you think — The only evidence that the jury could have convicted on was testimony by Deborah Holtz, who is the only person in the room, on impeachment. So a statement she made to law enforcement after the fact that she saw our client point the gun at the victim's neck. That's all she said. She said that to law enforcement after the fact, after being concussed. She was hit in the head with a telephone button. So, if that evidence was properly admitted, which I think nobody's contesting at this point, isn't that sufficient evidence from which a jury could conclude that there was deliberation? No, Your Honor. Perhaps that's evidence of second-degree murder, but not deliberation. If you look at this Court's decisions in Polk and Chambers, where the victim was stabbed 17 times, if you look at — But those are different cases. In other words, we're not dealing with an actual innocence claim in those cases. We were trying to figure out whether there was prejudice from the erroneous instruction. So if you were up here in the same procedural posture as Polk and others, you'd be — you'd be, you know, in a very different situation. We're trying to figure out here whether you can get through that gateway to get to that posture because of proof of actual innocence. And it's unfortunate for Mr. Slade that if he was — if he was not procedurally barred, he would absolutely obtain relief. He wouldn't even be here because, pursuant to Riley, Polk, or Chambers, he would obtain relief. But, Your Honor, I would submit that there isn't evidence of deliberation. He is actually innocent of this case. And this court has the ability in equity to find — to allow for his claim to be heard on the merits. I will reserve the rest of my time. Thank you, Counsel. Thank you. Good morning, Your Honors, and may it please the Court. I'm Deputy Attorney General Jamie Stills, and I represent Respondents at Belize. Respondents ask this Court to affirm the decision of the lower courts and hold that Slade is not entitled to habeas relief. In 1982, Slade and Karen Daniels argued in her apartment loud enough that the police were called. The next night, Slade returned to Karen's apartment with his friend, and while in Karen's bedroom, Slade argued with her again. Slade then positioned a gun against the left side of her neck. Whose gun — does the record tell us whose gun it was? The record does not demonstrate whose gun it is. Does the record indicate whether he brought the gun in or whether it was already there? The record doesn't say for sure, but the implication could be made that Slade brought that gun with him in his brown bag. How could that implication be made? His friend, Deborah, who accompanied him to the apartment, said that Slade could have brought it in his bag. The gun was not recovered after the murder either, even though if it was Karen's gun, it presumably would have been in her bedroom. Well, what I'd like you to do, if you can, to help us, because I think your friend agrees that the issue is whether there was any evidence in which a reasonable jury could have found premeditation. Tell us what the evidence — Deliberation. Deliberation. I'm sorry. It's just like the Duvada Supreme Court. I get them confused. So tell me what the evidence is, in your view, from which a reasonable jury could have found deliberation. Yes, Your Honor. There's a number of things that indicate that deliberation could have been found by the jury. So, for instance, Slade went to Karen's apartment the night before the murder and was arguing with her. Then he returned the following night and began arguing with her again. He also took a friend with him the following night when he continued this argument with her. He was arguing with her about the money that apparently somebody owed, and then he held the gun against her neck. When he held the gun against her neck, there was enough period of time for Karen to reach up and grab the gun in self-defense. There was also enough time for his friend Deborah to see that he actually had pulled the gun, which is what she said in her statement to the police, that he pulled the gun and held it against Karen's neck and then tried to leave the room before Slade shot Karen. Does her statement to the police come in for the truth of the matter or to impeach her at trial? It appeared from the transcript that it was both. There didn't appear to be an objection to the... Yeah, I can't find one either. I'm just trying to figure out how it would have come in for the truth of the matter. But that's okay. Okay. Slade also took time to wipe her blood off his hand onto the wall. So the first thing that Slade did was not to go and call for help. It was to wipe blood off of his hand onto the wall and onto the curtain. And then when Deborah and the kids ran in, he claimed that... I'm not sure if you're looking at the record, Your Honor, but I can tell you what page that's at. That's 3 ER 396. He then attempted to downplay what he did by telling Deborah and then the kids that he had just hit her, that he had just shot her on the side of her head, that it was not a big deal. Then Claire came in and he also attempted to downplay that to her as well before he purportedly went to go and call the ambulance. Does the post-killing evidence away from the scene have any relevance to the issue of deliberation? It does, Your Honor. Under Nevada law, jurors rarely have the direct evidence of someone's state of mind other than perhaps some sort of self-serving statement, some sort of self-serving testimony. So the jury has to look at the circumstances before, during, and after a murder to deduce the individual's intent. How long after does the jury consider evidence? What period of time is considered relevant for that determination? Obviously, the closer to the incident, the better. There's not really a specific limit on how long you can look, but regarding the time period closer to the incident happening, that's obviously going to be much more relevant. So is it your position that all of the testimony regarding his actions following the shooting were within a relevant time period? Yes, Your Honor. This was within a very short time period that he was chased by one of Karen's nieces and continued to run away. And then at the gas station that he went to, he called a taxi cab, he talked to the clerk for a moment, didn't say anything about somebody needing help, did not say anything about needing to call an ambulance. He just bought a chip – he bought some chips and some soda and sat there eating and drinking and playing video games. I'm trying to figure out how that – I understand how that's relevant to disprove that it was in a moment of passion and the passion might have continued. But how is it relevant to show deliberation? Well, the law is that the evidence of both premeditation and deliberation include the sequence of events leading to the death and then the manner in which those injuries were inflicted and then the conduct of the defendant following the murder. So the jury was permitted to – Deliberation requires some consideration of the consequences of the actions beforehand and perhaps after, but there's some consideration of the pros and cons of what he might be about to do. And what evidence is there that establishes that? There's the things that we were just speaking about earlier. In other words, his argument with Karen the night before and then returning to the apartment would have given him – the next day would have given him plenty of time for that type of consideration and weighing of the consequences. There was also the time period between which he pushed the gun, positioned it right against her neck before pulling the trigger. There was at least enough time period for Karen to grab up at the gun as well as for Deborah to attempt to escape the room. And then the jury was also permitted to infer that Slade would have acted very differently after the murder if he truly committed it as a result of a rash impulse. And obviously Slade is trying to reframe the narrative in a way most favorable to him. But he already presented this version of events to the jury, and they rejected it. Of course, the jury was not asked to find deliberation. The jury was asked to find deliberation as it was defined back then, according to Nevada law. Right, but we've since said that was wrong. Absolutely, Your Honor. But the Nevada Supreme Court has also followed that up by saying that that was actually the state of the law. And then we followed that up by saying, I don't care what you said. These are two separate elements. So that's a great argument in the Nevada Supreme Court, but it doesn't work as well here. Well, the interesting thing is that one of the Nevada state cases that actually proceeded rightly, which was NECA v. State in 2008, that case actually did affirm that the casual instruction was proper, according to Nevada law, at the time that Slade... I beg your pardon? We had a retroactivity issue there. Yes, Your Honor, but this court just recently upheld the NECA v. State issue, or the NECA v. State case, which did in fact uphold the NECA v. State court finding. Counsel, what's your position on the uncertified issue, whether or not we should expand the COA to include the uncertified issue? Respondents don't believe it should be expanded upon, but we are happy to provide supplemental briefing if this court decides it does want to hear from us on that issue. So what's your position on whether we should expand the COA? Do you have a position? Our position is that it's not necessary. There's sufficient evidence in the record at this time to make a decision, so it doesn't need to be expanded. Well, the expansion, and it brought to my mind, because you talked about the casual and the post-retroactivity, that's the uncertified issue that is being asked to be included. Yes, Your Honor. There's already been some briefing, to some degree, in the opening brief and the answering brief regarding Kaslan. Again, if this court is concerned about having further briefing on that matter, we're happy to provide it. But your position, I take it, is that even if we assume that Kaslan should have been applied at trial, actual innocence still hasn't been established. Correct, Your Honor. Because I must say, if this were a timely petition, you know, I'd have trouble with the position that Kaslan didn't apply. Yes, Your Honor. But the COA is asking us to apply it retroactively. The request to expand the COA is asking us to apply Kaslan retroactively. You have no position on that? Not at this time, Your Honor. We believe that there is sufficient argument and evidence in the record. If we apply Kaslan retroactively, would you lose if we did that? If Kaslan was applied retroactively? No, Your Honor. Because they'd still have to demonstrate actual innocence to get through the gateway. Yes, Your Honor. So there's two different components. There's the component that involves his challenge to the Kaslan instruction, which doesn't fit within that fundamental miscarriage of justice due to actual innocence. And then you also have to go on to determine whether there was even a change in law. Then you have to go to whether or not Slade is actually innocent. So there's several different parts. But as I understand our decision, Trey, in order for us to consider the habeas petition, which was untimely filed otherwise, we would have to conclude that Mr. Slade had demonstrated actual innocence. Correct, Your Honor. And that we don't get to any other issue unless. And in determining that, I'm perfect. It seems to me we might well assume that error was made at trial. But that doesn't matter unless he can demonstrate actual innocence, right? Absolutely, Your Honor. That's correct. But his argument is that he's actually innocent because of the instruction that was given he could not be guilty of first-degree murder if Kaslan were applied retroactively. That's his argument. If the instruction were as it should have been, he would not have been convicted of first-degree murder. That's his, I think, maybe we can ask if that's his theory. But that's not an actual innocence argument, is it? In other words, every argument that an error was made at trial and you wouldn't have been convicted without it is not an actual innocence claim. An actual innocence claim is I couldn't have committed it, as in Vosgian, because the law changed or because the evidence was simply insufficient to show under a correct view of the law that I committed the crime. So your position is it would only be the certificate of appealability would only be expanded if we determined that he had gone through the actual innocence gateway. That would be the only circumstance under which the COA should be expanded, if at all? No, that's not the only circumstance. That would just be a component. In this case, is it your – because I'm trying to figure out what your position is on the motion to expand the COA. Is it your position that in this case, if he cannot establish retroactual innocence, we never get to the CASLA? It's the – our position is that it's not necessary because he can't demonstrate actual innocence. Well, that's kind of a circular argument. Don't we have to assume that Castian applies in order to address his claim? Because his claim is showing – the jury was instructed on premeditation. He's not claiming that the jury couldn't have found premeditation. However, the case – Kaslan. Kaslan? Kaslan. Kaslan says that you don't need to show anything more. Premeditation is enough. So his claim is necessarily premised on the notion that you needed to show more. You needed to have separate evidence of deliberation. And so it seems to me that we have to assume, for purposes of addressing his actual innocence claim, that our prior decisions that say that instruction violated due process are correct. Because if we – if we assume the Nevada Supreme Court's correct and everything is hunky-dory, then he got exactly what he was entitled to. So his actual innocence claim is really premised on the notion that our decisions on Kaslan, including on a bad retroactivity, do apply. That's at least my cut at it. Am I wrong? That's correct, Your Honor. Our understanding as well is that the Slade's argument is predicated upon this premise that Kaslan – And so – and your argument is we can assume that. I take it your argument is we can assume that, but he still hasn't demonstrated actual innocence if we assume it. Even assuming that the Kaslan instruction was an error, which no court has found at this point, but even assuming that it is – no State court. I apologize. No State court has found that that was an error. Even assuming that, he still doesn't meet the requirements because his claim is really an instructional error claim, does not fit within the components of miscarriage of justice due to actual innocence. And even assuming that the Kaslan instruction was erroneous, even if a jury had been properly instructed, they still would have found sufficient evidence of deliberation. Thank you. Just a quick couple points on the actual innocence. Again, as your Honor has pointed out, this does not fit within the premise of an actual innocence claim is demonstrated by showing innocence of the charged crime. Well, but that's what he's saying. He's saying on the evidence presented at trial, no reasonable jury could have found deliberation. So he's putting himself in the context of an actual innocence claim. You're just disputing whether or not that evidence – he's correctly characterizing that evidence, right? It doesn't really fit because he was charged with open murder, which includes second-degree murder, which he has conceded at best or, excuse me, yeah, at best he was guilty of second-degree murder. But he was convicted of first-degree murder. But he's saying he could – he's actually innocent of first-degree murder. Yeah. Right. He's presenting this contorted definition of actual innocence because the underlying conduct that he was charged for, the murder of Karen Daniels, he still committed that. And I apologize, Your Honor. But it's not enough that you may have committed another crime. That's what Vostian seems to say. You know, I think pimping out your daughter is probably a crime, but it wasn't a crime under which he was charged. So his claim is I'm actually innocent of first-degree murder. He may or may not be correct about that. That's a separate issue. But it seems to me he's entitled to come in and say, I'm actually innocent of a crime for which I was convicted. I may have been guilty of many other crimes, but that wasn't the one I was convicted  of. I'm sorry, Your Honor. I see my time is up. May I briefly respond? Please. Thank you, Your Honor. Vostian does not really apply here because in Vostian what they said was when the court completely redefined the facts needed for conviction, i.e., the crime itself, that's when you can file a claim for actual innocence. So it made the underlying conduct no longer criminal. Here, the underlying conduct was no longer criminal. No, it didn't mean the underlying conduct was no longer criminal. It meant the underlying conduct could no longer give rise to a conviction for that offense. I mean, I have a hard time looking at an underlying conduct and thinking that this Court said it wasn't criminal. Exactly, Your Honor. That's why it doesn't fit within the actual innocence exception. He's trying to fit a jury instructional claim under the actual innocence exception. But that's not what the actual innocence exception is meant for. It's meant to be exceptionally rare. It's meant to be when somebody presents new evidence. And it's meant for someone who did not actually commit the crime. In other words, they didn't do it. Somebody else did it. That's what we've seen time and again throughout the various actual innocence claims, including Schlupp, including McQuiggins, including House. And that's not the situation here. Well, we're going on and on in this, but I want to make sure you understand. Vostian is not a claim that I didn't do it. Vostian admitted to all the facts. It just turned out later that under the law, those facts weren't sufficient to establish his guilt of that crime. And it seems to me that's exactly what your friend is saying, that on this record, I'm actually innocent of the crime in which I was convicted. He may or may not be right, but it seems to me that's a valid actual innocence claim. We then have to look at the record and see whether that's true. So the problem with expanding Vostian that way is that that would open up many, many different actual innocence claims that are really just an issue of the degree of murder being charged and the casual instruction being presented at trial. That's not what the actual innocence exception is meant for. Well, we understand your position. Thank you, Your Honor. Respondents respectfully request this court affirm. Thank you so much. Thank you. Counsel, could you clear up for me the request to expand the COA and how that fits into our decision? Well, Your Honor, we are, again, arguing that, unambiguously arguing that Mr. Slade is actually innocent of this. Right. So why would you need us to expand the COA to state that Kaslan is retroactive in order for us to resolve that issue? Well, Your Honor, that's due to the confusion that the Nevada Supreme Court has caused where no one knows where the law stands. But my problem with expanding it is we all agree that premeditation and deliberation, at least for purposes of this case, are two elements that have to be proved. Yes. Whether or not the jury was properly instructed or not, your burden today is to show us that no reasonable jury on this record could have found him. It's more likely than not that no reasonable juror would have found him guilty. What? No, you have to show us that there's not sufficient evidence from which a reasonable juror could have found deliberation. Well, the standard, Your Honor, for actual innocence is that it's more likely than not. It's more likely than not that you're innocent? That no reasonable juror would have convicted Mr. Slater of first-degree murder. That's right. We're saying the same thing. Yes. Okay. So going back to Judge Rollinson's question, we don't have to reach the retroactivity question, do we? I think the certified claim carries the day, Your Honor. That's all I wanted to know. It's a long way to getting to, no, we don't have to certify. In other words, if you haven't shown actual innocence, it doesn't matter whether that case is retroactive or not. Right. And, Your Honor, I would point out that as you consider this inequity within this Court's equitable powers, it's worth pointing out that the State of Nevada to this day is here arguing once more that Riley 1 and Riley 2 are poorly decided, and that reflects what they've done over the course of the last 40 years, almost 40 years, Your Honor, which is intentionally confuse the law to deny clients like Mr. Slater an avenue of relief. And lastly, if we look at deliberation, there were several factors that were noted by opposing counsel. Argument. Well, maybe there was an argument. That cuts against deliberation. He walked away. He walked away after trying to call 911 through two separate phones, three if you count the one upstairs, I suppose. That may show consciousness of guilt, but it doesn't show evidence of deliberation for first degree murder. And there's a tendency here to conflate everything, all this evidence of guilt to mean evidence of first degree murder. And that's not the case. And while it may be an academic exercise for us, it makes a big difference for someone like Mr. Slater, who is in prison for the rest of his life on not second, but first degree murder. All right. Thank you. Thank you, counsel. Thank you to both counsel. The case just argued is submitted for decision by the court. That completes our calendar for the morning. For the law clerks who are here, our law clerks will be able to stay and talk with you and judge Hurwitz and I will return once we've completed our conference. We are recessed until 9 30 a.m. Tomorrow morning.
judges: Linn, RAWLINSON, HURWITZ